# EXHIBIT 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 14-60545-CIV-MARRA

**MEREDITH REDDING,**

    **Plaintiff,**

v.

**NOVA SOUTHEASTERN UNIVERSITY,
INC. COLLEGE OF OSTEOPATHIC
MEDICINE and PATRICIO BRUNO,**

    **Defendants.**
_____/

### DECLARATION OF DR. BRIAN MICHAEL WARE

I, Dr. Brian Michael Ware, hereby declare as follows:

1. My name is Dr. Brian Michael Ware. I am over 18 years of age. I am capable of making this Declaration and am fully competent to testify to the matters herein. I have personal knowledge of each of the matters stated herein, and all such matters are true and correct.

2. I am a second year family practice resident at Florida Hospital East Orlando ("FHEO"). I first met Meredith Redding ("Ms. Redding") when I was a first year resident at FHEO. Ms. Redding was a third year medical student doing her surgical rotation at FHEO at the time. Ms. Redding's surgical rotation occurred during the month of July of 2013.

3. I spent around 2-5 hours a day with Ms. Redding during her surgical rotation. The time spent consisted of attending lectures together, being on the hospital floor observing patients, and discussing patient care.

4. Dr. Kenley Davis ("Dr. Davis") was the attending physician and preceptor during Ms. Redding's surgical rotation. When Dr. Davis was not around, he delegated some duties to

1

me to make sure students, including Ms. Redding, completed certain tasks, such as making sure patients were seen, discussing patient care with students, and educating students.

5. I normally communicated with Ms. Redding during her surgical rotation via telephone, mostly by text message. The conversations typically involved (1) whether Ms. Redding would be missing a day of rotation or would be arriving late, (2) meeting times, and (3) just common daily routines and things that went on around the hospital.

6. There were instances, however, when I received either text messages or phone calls from Ms. Redding that were of a personal nature and were not related to her clinical rotation. For example, in two different instances, Ms. Redding reached out to me to text about a fight with her boyfriend and her basement being flooded.

7. During Ms. Redding's surgical rotation, it always seemed as if she was dealing with personal issues that made things stressful for her. She missed rotation days, she seemed a little off at times, and, at times, did not act very professional. I recall one incident when Ms. Redding answered her phone in front of me in the middle of a conversation between the two of us, which was impolite and disrespectful. Another time, while in the elevator with Ms. Redding and others, Ms. Redding stepped in front of me and started fixing my collar. That moment was very awkward.

8. Following the elevator incident, Dr. Appel and I gave Ms. Redding a talk on professionalism.

9. Another time, during a meeting, Ms. Redding sat alone away from everyone. When asked about why she sat alone, she stated she was researching something relating to some sort of medical condition. When presenting her research on the medical condition, she "did a

2

split" in front of everyone as a demonstration. This was a very odd behavior and was not professional.

10. Ms. Redding would often invade other people's personal space, as demonstrated by the elevator incident. Ms. Redding also would sometimes not attend to patients in a timely manner.

11. Regarding Ms. Redding's surgical rotation evaluation, Dr. Davis, as the preceptor, was responsible for providing an assessment of the student. Dr. Davis would then send the assessment to Dr. Bruno for his review who is then responsible for sending the assessment back to Nova Southeastern University.

12. Because I spent more time with Ms. Redding than Dr. Davis, he asked me to complete Ms. Redding's evaluation and to send to him for review and approval. I recall that Ms. Redding had at least 3 absences, if not more, during her surgical rotation, although because we do not take daily attendance, I cannot recall the precise number. On the evaluation, I stated that Ms. Redding had zero absences because residents are typically more lenient and sympathetic on their evaluations of the students than the doctors higher up on the hierarchy.

13. Both Dr. Davis and Dr. Bruno had the authority to change my evaluation based on their own opinions and information regarding Ms. Redding's performance, either, for example, after speaking with other residents and staff or looking at attendance logs and records.

14. After my evaluation of Ms. Redding, I met with Dr. Bruno to discuss any issues with Ms. Redding and her performance. We talked about Ms. Redding's boundary issues including, for example, the elevator incident during which Ms. Redding stepped in front of me to fix my collar. I conveyed to Dr. Bruno that Ms. Redding sent me an inappropriate text message concerning a fight with her boyfriend. I also told Dr. Bruno about Ms. Redding's absences from

her surgical rotation and her missing of didactics and lectures. Based on my observation of Ms. Redding during her surgical rotation, I cannot disagree with Dr. Bruno's assessment of Ms. Redding in his evaluation of Ms. Redding. In fact, Dr. Bruno's comments in Ms. Redding's evaluation reflect our discussion and what I mentioned to Dr. Bruno during our meeting.

     I declare, under penalties of perjury, that I have read the foregoing declaration and that the facts stated in it are true.

                                                         _____ Brian Ware, D.O.
                                                         Dr. Brian Michael Ware