**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 14-cv-60545-MARRA**

MEREDITH REDDING,

      Plaintiff,

vs.

NOVA SOUTHEASTERN UNIVERSITY,
INC. COLLEGE OF OSTEOPATHIC
MEDICINE and PATRICIO BRUNO,
an individual,

      Defendants.

_____/

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT NOVA'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, MEREDITH REDDING, ("REDDING"), by and through her undersigned counsel, files this, her Memorandum in Opposition to Defendant's, NOVA, Motion for Summary Judgment, and in support thereof states as follows:

## I.      INTRODUCTION

1.   On March 4, 2014, Plaintiff brought this action against NOVA to remedy intentional discrimination that Plaintiff suffered on the basis of her disability in violation of the Rehabilitation Act, 29 U.S.C. 705, et seq. and Title III of the Americans with Disabilities Act, 42 U.S.C. § 12132 and BRUNO to remedy defamatory statements made by him against her. [DE 1]

2.   On April 21, 2014, Plaintiff filed her Amended Complaint, alleging: 1: Violations of the Rehabilitation Act; 2:  Violations of the ADA; and 3) Defamation.  [DE 15]

3.   On February 6, 2015, Plaintiff filed her Second Amended Complaint again alleging:  1) Violations of the Rehabilitation Act; 2) Violations of the ADA; and 3) Defamation.  [DE 37].

LAW OFFICES OF SHAWN L. BIRKEN, P.A.
100 SE 3rd Ave., Suite 1300, Fort Lauderdale, Florida 33394
Phone: 954.990.4459 | Fax: 954.990.4469
www.birken-law.com

4.   Defendant, NOVA, files this, its Motion for Summary Judgment.   Defendant's Motion argues that Redding was not otherwise qualified under the ADA or Rehabilitation Act; there is no evidence that Redding was dismissed due to her disability; and Defendant, NOVA did not deny Redding reasonable accommodations.

5.   Defendant, NOVA's initial argument is that Redding was not otherwise qualified for an essential portion of the program, she is not "otherwise qualified" for the entirety of the program. Yet, later in its argument, Defendant, NOVA argues that Redding "contends that she was denied a reasonable accommodation throughout her M1 and M2 years of the osteopathic medicine program, yet was able to complete said years successfully without the accommodations she alleges to have been denied."  Motion at 17.  Therefore, Defendant, NOVA argues that Redding was not qualified to complete the medical program, but was qualified to complete the first two years of the osteopathic medicine program.

6.   This argument also ignores the mistreatment of Redding for her first four (4) years of attending school.  Substantively, Defendant's, NOVA, position that Redding is not qualified is not supported by the facts of the case and much of Defendant's explanations are contradictory, evidencing pretext.

7.   Defendant, NOVA's, failure to provide Redding accommodations caused Redding to need four (4) years to complete a two (2) year program, despite many obstacles by Defendant, NOVA. Defendant, NOVA also ignores facts regarding Redding's consistent attempts to seek accommodations from Defendant, NOVA, which Defendant, NOVA ignored for several years.

8.   Redding's dismissal from her rotations in Orlando were assisted by Defendant, NOVA's, failure to inform her supervisor of rotations in Orlando that she had a disability, was exacerbated by

LAW OFFICES OF SHAWN L BIRKEN, P.A.
100 SE 3rd Ave., Suite 1300, Fort Lauderdale, Florida 33394
Phone: 954.990.4459 | Fax: 954.990.4469
www.birken-law.com

Defendant, NOVA, and was improperly utilized by Defendant, NOVA, to dismiss Redding from the osteopathic medicine program.

9.    The facts are clear that NOVA's continued practice of not providing Redding with reasonable accommodation; putting roadblocks in Redding's path; not supporting Redding; and then dismissing Redding due to her disability violate the ADA and Rehabilitation Act, and NOVA's Motion should be denied.

## II.    MEMORANDUM OF LAW

### A.    SUMMARY JUDGMENT STANDARD

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). According to the plain language of Fed.R.Civ.P. 56(e), the non-moving party "may

LAW OFFICES OF SHAWN L BIRKEN, P.A.
100 SE 3rd Ave., Suite 1300, Fort Lauderdale, Florida 33394
Phone: 954.990.4459 | Fax: 954.990.4469
www.birken-law.com

not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); <u>Matsushita</u>, 475 U.S. at 587.

## B.    REHABILITATION ACT

Section 504 of the Rehabilitation Act, reads "No otherwise qualified handicapped individual in the United States ... shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...." 29 U.S.C. § 794(a). The elements of a cause of action under § 504 of the Rehabilitation Act are: (1) the plaintiff is an individual with a disability under the Rehabilitation Act; (2) the plaintiff is otherwise qualified for participation in the program; (3) the plaintiff is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely by reason of his or her disability; and (4) the relevant program or activity is receiving federal financial assistance.  <u>L.M.P. ex rel. E.P. v. Sch. Bd. of Broward Cnty., Fla.</u>, 516 F. Supp. 2d 1294, 1301 (S.D. Fla. 2007); <u>L.J. v. Broward County School Bd.</u>, 2007 WL 1695333 at 3 (S.D.Fla.,2007)(citing 1 *Americans with Disabilities: Practice and Compliance Manual* § 1:3 (May, 2007)); <u>Grzan v. Charter Hosp. of Northwest Indiana</u>, 104 F.3d 116, 119 (7th Cir.1997).  In the context of education services, the United States Supreme Court held in <u>Smith v. Robinson</u>, 468 U.S. 992 (1984), that section 504 does not require affirmative efforts to overcome the disabilities caused by handicaps, but instead "simply prevents discrimination on the basis of handicap." <u>Id</u>. at 1017.

Section 504 of the Rehabilitation Act of 1973 prohibits federal agencies from discriminating against "otherwise qualified" disabled employees. 29 U.S.C. § 794(a). Discrimination claims brought under the Rehabilitation Act are governed by the same standards

LAW OFFICES OF SHAWN L BIRKEN, P.A.
100 SE 3rd Ave., Suite 1300, Fort Lauderdale, Florida 33394
Phone: 954.990.4459 | Fax: 954.990.4469
www.birken-law.com

as claims brought under Title I of the Americans with Disabilities Act of 1990 ("ADA"). Holbrook v. City of Alpharetta, 112 F.3d 1522, 1526 n. 2 (11th Cir.1997). Such claims are analyzed under the three-part test outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Durley v. APAC, Inc., 236 F.3d 651, 657 (11th Cir.2000) (McDonnell Douglas framework applies to ADA disability discrimination claims). First, the plaintiff must present a prima facie case of disability discrimination.  Boone v. Rumsfeld, 172 F. App'x 268, 270-71 (11th Cir. 2006); Cleveland v. Home Shopping Network, Inc., 369 F.3d 1189, 1193 (11th Cir.2004). If the plaintiff establishes a prima facie case, the defendants may rebut it by articulating a legitimate, nondiscriminatory reason for the adverse employment action.  Id. Once the defendants have rebutted plaintiff's prima facie case, the plaintiff bears the burden of establishing that the defendants' reason is pretextual. Id.

## C.      BACKGROUND

Meredith Redding was diagnosed with Crohn's disease in 1996, which resulted in innumerable hospitalizations and procedures during the subsequent portion of her life.  In 2008, Redding attended Defendant's, NOVA, College of Osteopathic Medicine.  Redding completed her first year and received good grades.  Her health began to falter in the Spring of 2009 during her second year of medical school.  Due to multiple hospitalizations, Redding began missing exams.  Redding reached out to her professors, as well as administration, the school's disabilities office and the person that oversaw the ADA compliance for the Health Professions Division. The assistance Redding received was limited, often ignored.  Ultimately, Redding had been placed on disability leave and for one semester, was given a decelerated schedule.

Ultimately, in May, 2012, due to the lack of accommodations provided by Defendant, NOVA, Redding had accumulated fifteen (15) hours of failures and was directed to the Student

LAW OFFICES OF SHAWN L BIRKEN, P.A.
100 SE 3rd Ave., Suite 1300, Fort Lauderdale, Florida 33394
Phone: 954.990.4459 | Fax: 954.990.4469
www.birken-law.com

Progress Committee.  Redding informed the Committee of her illness and her continued attempts to seek assistance and accommodations.  The Committee was going to allow Redding to continue, but after a presentation by Dr. Elaine Wallace, the Committee determined to dismiss Redding from the School of Medicine.  Redding appealed the finding and was readmitted.

Realizing their errors in assisting Redding, just five (5) days after Redding had been readmitted, the ADA compliance group met and determined that Redding was to be "escorted" to the office of ADA compliance as soon as she returned to school.  When Redding returned to school, she met with ADA compliance, provided the information sought and in October, 2012, Redding thought she was finally granted certain accommodations.

Since 1995, Defendant, NOVA, had provided generic accommodations regardless of the disability.  As Redding's accommodations sought assistance beyond what was ordinarily provided, Dr. Elaine Wallace, along with Ray Ferrero, the head of ADA compliance, overturned Redding's accommodations and resorted to Defendant's, NOVA, fallback accommodation. Ferrero had never seen Wallace and the Dean overturn or change an accommodation other than with Redding.

Despite Defendant's, NOVA, many obstacles, Redding finished her second year of school and began her rotations at Florida Hospital East Orlando, ("FHEO").  Nobody at FHEO was told about Redding's disability, her requests for accommodations or her accommodations. Redding finished her first rotation, surgery, and received a positive evaluation and a passing score.  Redding attended the first day of her second rotation, pediatrics, but had an adverse reaction to her Crohn's medication.  She was absent on August 5, 6 and 7, 2013.  She contacted a resident for FHEO, and a person that she was very friendly, to tell her about the situation. Redding also sent texts to this person, but the texts were incoherent due to her condition.

LAW OFFICES OF SHAWN L BIRKEN, P.A.
100 SE 3rd Ave., Suite 1300, Fort Lauderdale, Florida 33394
Phone: 954.990.4459 | Fax: 954.990.4469
www.birken-law.com

As a result of her absences, Redding was summoned to the Director of Medical Education's office, Defendant, Bruno, on August 7, 2013.  Redding met with Defendant, Bruno, at 3:30 P.M. Defendant, Bruno, and misconstrued Redding's behavior and perceived that Redding had mental issues.  Within 90 minutes, Defendant, Bruno, instructed Defendant, NOVA, that Redding was going to be returned.  Dr. Elaine Wallace indicated that Redding had a "significant history" and the office of the Dean would handle the matter.  Nobody informed Defendant, Bruno, that Redding had a disability and Redding was not given the opportunity to inform Defendant, Bruno, of his misperception.

Defendant, Bruno, then created an alternate surgical evaluation including information that was factually incorrect.  Two days later, Defendant, Bruno, took the passing surgical evaluation and altered it to indicate that Redding failed the surgical rotation.  This act was deemed unusual by Wallace and Defendant, Bruno.  Defendant, Bruno, also sent an evaluation for pediatrics indicating that Redding failed due to absences.

Defendant, NOVA, took these two and commenced a Student Progress Committee to dismiss Redding.  At the meeting and during the appeal, there was a dearth of specific information provided, and further, information regarding Redding's medical history was largely ignored.  Ultimately, Redding was dismissed from Defendant, NOVA.

## D.    REDDING WAS QUALIFIED

Defendant's argues that Redding was not an otherwise qualified individual under the ADA or Rehabilitation Act.  A qualified person under the ADA is one with a disability who can perform the essential functions of his job with or without reasonable accommodations. School Bd. of Nassau County, Fla. v. Arline, 480 U.S. 273, 287 n. 17 (1987).  "Determining whether an individual is 'qualified' for a job is a two-step process."  Gary v. Georgia Dep't of Human Res.,

LAW OFFICES OF SHAWN L BIRKEN, P.A.
100 SE 3rd Ave., Suite 1300, Fort Lauderdale, Florida 33394
Phone: 954.990.4459 | Fax: 954.990.4469
www.birken-law.com

206 F. App'x 849, 851-52 (11th Cir. 2006);  Reed v. Heil Co., 206 F.3d 1055, 1062 (11th Cir.2000). First, the individual must satisfy the prerequisites for the position by demonstrating "sufficient experience and skills, an adequate educational background, or the appropriate licenses for the job." Id. Second, the individual must demonstrate that she can perform the essential functions of the job, either with or without reasonable accommodations. Id.

Defendant argues that Redding is not an "otherwise qualified" individual as she was unable to successfully complete two clinical rotations which are essential components of the program. Motion at 4.  However, Defendant also argues: "Plaintiff was able to successfully meet the academic requirements and ultimately complete the didactic years of her medical education (M1 and M2) successfully once granted the accommodations of extra test time and frequent bathroom breaks."  Motion at 13.  Therefore, for purposes of this argument section, Defendant appears to concede that Redding was qualified as to all of her other allegations, except for her dismissal. Also, Defendant's argument is really its legitimate non-discriminatory reason for dismissal.  Additionally, Defendant's argument only pertains to Redding's dismissal from school and does not include any other acts of discrimination against Redding.

As to the determination of her dismissal, "[t]he Committee on this particular issue would have decided only on clinical rotations because Meredith Redding had successfully matriculated through years one and two.  So this was wan issue of year three."  Wallace Depo. at 151. Redding's initial evaluation, created by her preceptor and her supervising resident both evaluated Redding positively, and Redding received a passing evaluation.  See July 25, 2013, Surgery Clinical Rotation Evaluation.  Defendant's corporate representative testified:

> Q.    It would appear, based on Dr. Davis, that Meredith Redding would have passed her clinical rotation?

LAW OFFICES OF SHAWN L BIRKEN, P.A.
100 SE 3rd Ave., Suite 1300, Fort Lauderdale, Florida 33394
Phone: 954.990.4459 | Fax: 954.990.4469
www.birken-law.com

A.    It would appear she would have passed the rotation upon the signature of Dr. Bruno.

Wallace Depo. at 146-147.  However, according to Defendant's own guidelines, a grade requires only a Preceptor Evaluation; Case Report Evaluation; End of Rotation Exam (COMAT) and Web based modules.  See Evaluation of Students on Rotation, attached hereto as Exhibit "S". Dr. Davis was Redding's preceptor who had provided a passing evaluation.  As to Preceptor Evaluation, one evaluation per rotation is accepted by Defendant, NOVA, and the evaluation can be done by designated supervisory preceptor; a "group" consensus; and signed by preceptor and student and "the DME if applicable." Id.  Even Defendant, Bruno, stated in his correspondence to Defendant, NOVA, that Redding "completed her first rotation (general surgery)."  So, according to the evaluations, Defendant's corporate representative and current Dean, and the Director of Medical Education, Redding completed her first rotation, and had initially passed the rotation.  This shows that Redding was qualified as it pertains to her first rotation.  In fact, it shows that she was a qualified individual with a disability that did perform her studies.  Fouraker v. Publix Super Markets, Inc., 959 F.Supp. 1504, 1507 (M.D. Fla.,1997) (Generally, performance of a job is evidence that he can perform the essential functions of his job and thus is a qualified individual under the Act.); Clark v. Coats & Clark, 990 F.2d 1217, 1227 (11th Cir.1993); Pace v. Southern Railway System, 701 F.2d 1383, 1386 n. 7 (11th Cir.1983).  Redding performed the essential functions of her rotation.

As to the second rotation, Redding did not protest the failure, but her three days of absences were due to her Crohn's.  Redding attended her first two days, then on August 5, 2013, Redding was having a "[a] Crohn's flare and medication I took made me extremely loopy." Redding Depo. May 6, 2015 at 22-23, 34.  "My Crohn's was flaring and when I spoke to Jayde

(Dr. George) I came across loopy, but it was not - - it was due to a side effect of the medication I

was taking." Id. at 36. Dr. George told Redding: "you shouldn't see patients. I'll take care of

everything." Id. at 18-19. Redding was too sick to leave her house on August 5 and 6. Id. at 24-

25. On August 7, 2013, Dr. George noticed that Redding was absent and alerted Defendant,

Bruno. Id. at 18, 19, 35.

These absences led to Redding's meeting with Defendant, Bruno, on August 7, 2013. Id.

at 79. This was the first time Defendant, Bruno, had ever met Redding (besides the possibility of

meeting her generally at orientation). Id. Within ninety minutes of the meeting with Redding,

Defendant, Bruno, told Defendant that he was returning Redding to Defendant. See August 7,

2013 email chain. Nobody at Defendant, NOVA, told Defendant, Bruno, that Redding had

Crohn's disease and nobody told Defendant, Bruno, that Redding might need certain

accommodations because of her disability. Bruno Depo. at 32 [DE 70-1 at 10]. In fact, it was

unclear how Redding would even know how to obtain a new accommodation for her rotation.

Wallace testified:

> Q. And with regards to Ms. Redding's failure tin the pediatric rotation due to her
> inappropriate absences, there was information presented by Ms. Redding that she
> could not attend because of her illness, right?
> A. Correct.
> ---
> Q. So, I guess, what recourse would somebody with a disability, who was forced to
> miss more than two days of a rotation, have?
> A. I would assume they go back through the Committee, Mr. Ferrero's office, and
> the Committee, to revisit their request for accommodations.
> Q. And that burden would be on the student?
> A. Yes, sir.
> Q. And so, if Ms. Redding went through the process to Mr. Ferrero, requested an
> accommodation, a separate accommodation, and some of that accommodation
> was granted, how would Ms. Redding know that she needed to make another
> request for accommodation for her rotation?
> A. I do not know. She would have to do a - - sir, I know that is the proper place for
> her to go.

LAW OFFICES OF SHAWN L BIRKEN, P.A.
100 SE 3rd Ave., Suite 1300, Fort Lauderdale, Florida 33394
Phone: 954.990.4459 | Fax: 954.990.4469
www.birken-law.com

Q.      I guess the question is, how would she know?

A.      I would not know sir.

Wallace Depo. at 82-84.

At 5:55 P.M., Associate Dean Wallace responded:   "The call for a mental health evaluation is a matter that is not directed by student services, but through the office of the dean. **This is a case with significant history** that Dr. Wilson is not necessarily privy to.  Dr. Wilson, please do not call this student, but speak with me in the morning and the office of the Dean will facilitate this matter."  <u>Id.</u>  (emphasis added).

As for the reasons for returning Redding back to Defendant, NOVA, there were major inconsistencies.  Defendant, Bruno, testified that "a majority of the percent" of the decision to return Redding back to Defendant, Nova, was due to his perception of her emotional instability. Bruno Depo. at 90-91.    Dr. DeGaetano testified that Defendant, Bruno, told him Redding's "absenteeism was the most notable."   DeGaetano Depo. at 10.   Wallace testified that "Dr. DeGaetano presented the letter from Dr. Bruno, and related that there was a failure by Meredith Redding due to absenteeism."   Wallace Depo. at 54. These inconsistencies evidence pre-text. <u>Damon v. Fleming Supermarkets Of Florida, Inc.</u>, 196 F.3d 1354, 1360 (11th Cir. 1999) ([W]e find that a jury could infer that the "inconsistencies" between Soto's deposition and affidavit may be evidence of pretext."); <u>Tidwell v. Carter Products</u>, 135 F.3d 1422, 1427-28 (11th Cir.1998) (citing <u>Be</u>chtel Construction Co. v. Secretary of Labor, 50 F.3d 926 (11th Cir.1995); <u>Howard v. BP Oil Co., Inc.</u>, 32 F.3d 520, 525 (11th Cir.1994)).

Even further, Redding was brought before the Student Progress Committee, and was ultimately dismissed from Defendant, NOVA, based on her two failures on rotations.  Wallace Depo. at 58.   The two failures were as a result of Defendant, BRUNO, taking a passing

LAW OFFICES OF SHAWN L BIRKEN, P.A.
100 SE 3rd Ave., Suite 1300, Fort Lauderdale, Florida 33394
Phone: 954.990.4459 | Fax: 954.990.4469
www.birken-law.com

evaluation provided by Dr. Davis and Dr. Ware, and changing the information, and also concocting his own evaluation (even though he had never observed Redding during her rotations).   Defendant, Bruno, admitted that changing a preceptor's evaluation was unusual. Bruno. Depo at 73.  "It doesn't happen too often."  Id.  Dr. Wallace testified that Defendant's, Bruno, actions were unusual ("It was unusual.  Yes.  It was unusual.")  Wallace Depo. at 52.  In examining Defendant's, Bruno, evaluations side-to-side, Wallace did "see that there is an inconsistency."  Id. at 144.  In fact, "[i]t would appear she would have passed the rotation upon the signature of Dr. Bruno."  Id. at 146-147.

Redding had attended and passed her M1 and M2 years at Defendant's, NOVA, campus in four (4) years.  Defendant, NOVA, passed her and sent her to begin her rotations. She was not disciplined for anything other than her earlier academic hearing.  Id. at 154.  Then, Redding starts her rotations, passes her surgical rotation, has an adverse reaction to her Crohn's medicine, texts her friend while having these adverse reactions (which resulted in incoherent texts), and was forced to miss August 5, 6 and 7 of her pediatric rotation.  Redding met with Defendant, Bruno, for the first time on August 7, 2013, and contrary to his testimony, Defendant, Bruno, decided to send Redding back to Defendant, NOVA and fail her for her two rotations.  On the same day, Wallace referenced Redding's "significant history".  Defendant, NOVA, receives conflicting and unusual evaluations, yet rely on those evaluations to begin the process of dismissing Redding.  Further, Redding provides unrebutted evidence that her absences in pediatrics were caused by her Crohn's medicine.  Yet, without providing any specifics, Defendant, NOVA, dismissed Redding from medical school.  Again, based on the inconsistencies and lack of support, Defendant's, NOVA, Motion as it pertains to Redding not be

LAW OFFICES OF SHAWN L BIRKEN, P.A.
100 SE 3rd Ave., Suite 1300, Fort Lauderdale, Florida 33394
Phone: 954.990.4459 | Fax: 954.990.4469
www.birken-law.com

qualified, should be denied.  <u>Damon</u>, 196 F.3d 1354, 1360; <u>Tidwell</u>, 135 F.3d 1422, 1427-28;

<u>Bechtel Construction Co.</u>, 50 F.3d 926.

## E.      REASONABLE ACCOMMODATION

### 1.      Seeking a Reasonable Accommodation

Defendant initially argues that "Redding did not request reasonable accommodations

until October, 2012."  Motion at 7.  Defendant's corporate representative, Elaine Wallace,

current Dean of Nova's School of Osteopathic Medicine, testified:

> Q.    What is your understanding of the policy?
> A.    My understanding is that a student who is seeking disability accommodations,
> verbalizes and/or communicates with us that he or she would like to have a
> disability accommodation.  At that point we interact with the student and refer to
> the proper liaison for disability, and the Health Professional Division, and other
> locales on the campus, which I do not have direct communication with.

Wallace Depo. at 9-10.  Defendant, NOVA, does not know the first time Redding verbalized that

she was seeking accommodations from the school.  <u>Id.</u> at 10, 13.  Defendants, NOVA, was

asked:

> Q.    As you sit here today, as the corporate representative to testify as to certain items,
> including when Ms. Redding requested accommodations, do you have any
> evidence to disprove her contention that she asked for accommodations in 2008 or
> 2009?
> A.    I have no ability to prove or disprove that, sir.
> ---
> Q.    So at least, factually, do you have any evidence to disprove Ms. Redding's
> contention that she requested an accommodation in 2009?
> A.    Factually, no, sir.
> Q.    Do you have any factual evidence that disputes Ms. Redding's contention that she
> asked for accommodations in 2010?
> A.    Factually, no, sir.
> Q.    Do you have any factual evidence that dispute Ms. Redding's assertion that she
> requested accommodations in 2011?
> A.    Factually, no, sir.

LAW OFFICES OF SHAWN L BIRKEN, P.A.
100 SE 3rd Ave., Suite 1300, Fort Lauderdale, Florida 33394
Phone: 954.990.4459 | Fax: 954.990.4469
www.birken-law.com

Id. at 13-14.   Redding testified that she continuously requested accommodations.   Wallace conceded that in 2009 Redding was asking for assistance and requesting to take different exams. Id. at 128-129.

Redding's testimony is supported by the Student Progress Committee Meeting Minutes for May 18, 2012, July 25, 2013 Appeals Board Minutes.  The minutes note that Redding's appeal involved "a question of accommodations" for Redding, and that Redding had been denied accommodations.   Id.   The minutes further indicate that Redding "attempted to get accommodations through 5 sources, such as Dr. Whitehead, Dr. Hilda DeGaetano, Dr. Wallace, the Disabilities Office across campus and Mr. Ferrero's office." Id.

On March 17, 2011, Redding sent Ray Ferrero III, Defendant's, NOVA, liaison of the Health Professional Division, an email.  Redding instructed Ferrero that she had Crohn's and stated that she would "very much like to meet with you at your convenience to discuss my circumstances and how to complete the needed requirements to be placed under the ADA act." Defendant argues that Ferrero might not have received Redding's email, yet a path shows that Ferrero gave his email address to a student who gave the email address to Redding. Additionally, Ferrero's email address was on his blog and his LinkedIn account and was "easily accessible." Ferraro Depo. at 14.

Redding also testified that in 2010 she contacted Arlene Giczkowski, the person listed on Defendant's Student disability services website.  Ms. Giczkowski likewise did not help Redding.

It is undisputed that Redding did not receive an accommodation until October, 2012. Therefore, Redding had started asking for accommodations in 2009, following the directives set forth by Wallace, contacted the person listed on Defendant's, NOVA, website identified as the

LAW OFFICES OF SHAWN L BIRKEN, P.A.
100 SE 3rd Ave., Suite 1300, Fort Lauderdale, Florida 33394
Phone: 954.990.4459 | Fax: 954.990.4469
www.birken-law.com

person to assist her, even contacting the designated liaison for Defendant in March, 2011, yet she did not receive an accommodation until October, 2012.

The initial burden is on the student, who must identify her disability and make a case for specific accommodations.  Forbes v. St. Thomas Univ., Inc., 768 F. Supp. 2d 1222, 1231 (S.D. Fla. 2010); Stern v. Univ. of Osteopathic Med. and Health Sci., 220 F.3d 906 (8th Cir.2000); Taylor v. Principal Fin. Group, Inc., 93 F.3d 155, 165 (5th Cir.1996) (where either disability or necessary accommodations "are not open, obvious, and apparent, the initial burden rests primarily on the [individual] to specifically identify the disability ... and to suggest the reasonable accommodations"). Then the school is required to consider the request and make a reasoned decision to grant or deny it.  Forbes, 768 F. Supp. 2d 1222, 1231    Because academic faculties have a special understanding about which aspects of the educational experience can be modified, a school's decision about accommodations will be upheld unless it is plainly not based on professional judgment.  In the instant case, Defendant, NOVA, ignored Redding's requests for three years.  Accordingly, their Motion for Summary Judgment should be denied.  Breda v. Wolf Camera & Video, 222 F.3d 886, 890 (11th Cir. 2000) ("The sole inquiry when the employer has a clear and published policy is whether the complaining employee followed the procedures established in the company's policy.") Redding testified that she exhausted multiple avenues, including contacting the specifically designated individuals that were supposed to assist her.  The requests for accommodations were ignored from 2009 to October, 2012.

### 2.    Requested Accommodations / Undue Burden

Ignoring the failure to provide accommodations for over three (3) years, Defendant next argues that it provided Redding with sufficient accommodations.  "Based upon the documentation provided by her physician, the Office of Student Disability Services approved

LAW OFFICES OF SHAWN L BIRKEN, P.A.
100 SE 3rd Ave., Suite 1300, Fort Lauderdale, Florida 33394
Phone: 954.990.4459 | Fax: 954.990.4469
www.birken-law.com

Plaintiff with accommodations of extra time on written exams and permission to take frequent bathroom breaks during class and exams." Motion at 10. The standard accommodation since 1995 was for all students requesting accommodations, regardless of the disability, was time and a half for written examinations. Wilkinson Depo. at 16-17, 31, 37, 41. Therefore, the accommodations provided by Defendant, NOVA, were the same generic accommodation given to all disabled students.

On October 25, 2012, Susan Gonzalez from the Student Disability Services Office emailed Dr. Wilkinson and informed her that Redding had been granted accommodations due to her documented disability. See October 25, 2012, email from Gonzalez. A Memorandum of Accommodations was issued, granting Redding accommodations including being allowed bathroom breaks during class and examinations; flexibility with make-up exams (with physician's note); and multiple choice questions  when possible rather than long essay questions. See Memorandum of Accommodations dated October 25, 2012. On October 25, 2012, Redding had been approved the aforementioned accommodations. See Procedures and Agreement for Specialized Services, dated October 25, 2012.

On October 25, 2012, Susan Gonzalez from the Student Disability Services Office emailed Dr. Wilkinson and informed her that Redding had been granted accommodations due to her documented disability. See October 25, 2012, email from Gonzalez. On October 25, 2012, a Memorandum of Accommodations was issued, granting Redding accommodations including being allowed bathroom breaks during class and examinations; flexibility with make-up exams (with physician's note); and multiple choice questions  when possible rather than long essay questions. See Memorandum of Accommodations dated October 25, 2012. On October 25,

LAW OFFICES OF SHAWN L BIRKEN, P.A.
100 SE 3rd Ave., Suite 1300, Fort Lauderdale, Florida 33394
Phone: 954.990.4459 | Fax: 954.990.4469
www.birken-law.com

2012, Redding had been approved the aforementioned accommodations.   <u>See</u> Procedures and

Agreement for Specialized Services, dated October 25, 2012.

Since Redding's accommodations were not the generic one provided by Defendant,

NOVA, Wilkinson notified the Dean's office.  Wilkinson Depo. at 66-67.  The determination of

the appropriateness of Redding's accommodations is in dispute by Defendant's, NOVA,

witnesses.  Wilkinson testified that she had no role, other than intermediary, in determining or

changing Redding's accommodations.  <u>Id.</u> at 80.  Wallace testified:

> Q.    And what was your role in NSU approving Ms. Redding's accommodations?
> A.    My role is once we are notified what the accommodation is, Dr. Marge Wilkinson, who is the ombudsman for the College of Osteopathic Medicine, communicates with Ray Ferrero, III, Susan Gonzalez, and/or the current Committee.  That information comes to us, and it is my role to either see that the accommodation, per the Committee and/or Mr. Ferrero, III, is appropriately carried out.
> Q.    Who determines what that reasonable accommodation is?
> A.    Mr. Ferrero, III, and his Committee.
> Q.    When you say "his Committee," who does that?
> A.    I do not know, sir.  I'm not privy to that.
> Q.    How many people are in his Committee?
> A.    I do not know, sir.
> Q.    Had you ever communicated with anybody in Mr. Ferrero's Committee with regard to accommodations?
> A.    No, sir.  I did not.

---

> Q.    Do you know if Mr. Ferrero asked Ms. Redding why she was requesting a change in the test format?
> A.    I do not, sir.
> Q.    Did you ask him?
> A.    Mr. Ferrero, no, sir.  I did not communicate with him.

Wallace Depo. at 15-17.  Wallace further testified: "No.  The Dean wanted to know that, and it

is not the policy of Mr. Ferrero's office to articulate to us why certain things are accommodated

or not accommodated.  So I did not find it unusual that it came back different, and neither would

I ask him what it was because it is not our policy to be privy to that information."  <u>Id.</u> at 19.

LAW OFFICES OF SHAWN L BIRKEN, P.A.
100 SE 3rd Ave., Suite 1300, Fort Lauderdale, Florida 33394
Phone: 954.990.4459 | Fax: 954.990.4469
www.birken-law.com

Ferraro testified differently:

> Q.   Do you recall a meeting with either Dean Silvagni or Dr. Wallace?
> A.   I do remember sitting with the two of them.
> Q.   I'm sorry?  Hello?
> A.   I do recall having a meeting specifically in Tony's office, that's Dean Silvagni with Elaine Wallace.

Ferrero Depo. at 47-48.  Even though the information and documentation had previously been sufficient, it was later determined that Redding's accommodations would be changed.  Id. at 49-50.  Ferrero further testified:

> Q.   Do you recollect a time other than this where Dean Silvagni and Dr. Wallace requested that certain accommodations be withdrawn or changed?
> A.   No, not that I recall.

Id. at 51.  Defendant, NOVA, maintains that it has an appeal mechanism should a student's request for accommodation be denied.  However, Dr. Wilkinson is not aware of single student that exercised their right to appeal the ADA accommodation provided by Defendant, NOVA.  Wilkinson Depo. at 86.

As to the actual accommodations, Redding sought the accommodations for a number of reasons.  As to the format of the make-up exam, When Redding took her make up exams in the same format as the normal exam, she did well.  Redding Depo. December 16, 2014 at 58.  When the make-up exams changed the format Redding did worse.  Id. at 58.  Dr. Tracy Favreau, the head of dermatology called Redding and told her that the make-up exams "were made to fail.  You will fail if I don't give you the answers."  Id. at 58-59.  Dr. Favreau gave Redding the first 11 topics of the exam and told her "[t]his is the only way you will pass this test."  Id. at 59; Examination Notes taken during call.    Dr. Hilda De Gaetano told Redding that the makeup exams are in a different format as a punishment and a deterrent.  Redding Depo., December 16, 2014 at 96.

LAW OFFICES OF SHAWN L BIRKEN, P.A.
100 SE 3rd Ave., Suite 1300, Fort Lauderdale, Florida 33394
Phone: 954.990.4459 | Fax: 954.990.4469
www.birken-law.com

Additionally, Redding was asking for the same exam the other students took.  It is unclear how this request would create an undue administrative and financial burden since the exam already existed.  Additionally, the original request clearly stated "where available", meaning any situation in which the accommodation was not available, it would not be offered.  As to the date of the make-up examination, Defendant argues that this would allow Redding preferential treatment.  However, as discussed and acknowledged by Wallace, the purported "neutral" policy affected Redding negatively due to her health.  Wallace Depo. at 77.  Wallace further testified that some of Redding's failure had to do with her ability to attend examinations.  Id. at 74.

Additionally, allowing Redding to take a make-up examination had already been an accommodation granted by Dean Silvagni to Redding in 2009.  As Redding testified, her issues were exacerbated by Defendant's, NOVA, policy and lack of accommodations, wherein if she was absent, she would only have two weeks from the initial exam to take the makeup exam; so as she is studying for the makeup exam in the more difficult format, the new block has already begun so she starts two weeks behind; and the issues compound.  Id. at 82.  "And then when you add hospitalization into the middle of that, entering - - starting to study for blocks, two weeks behind everyone else in the class and taking makeup exams and failing and getting short hours of sleep, yes, by the time I was at the end of that first semester, everything was makeup.  I was not prepared to take a midterm in the third week of a block because I had just taken the makeup exam for the block prior maybe three days before." Id. at 82.  More than half of Redding's M2 exams were taken as makeup exams.  Id. at 83.  Redding asked if she could take the makeup exams at the end of the semester, instead of within two weeks as per Defendant's, NOVA, policy, and was denied the accommodation.  Id. at 86.

LAW OFFICES OF SHAWN L BIRKEN, P.A.
100 SE 3rd Ave., Suite 1300, Fort Lauderdale, Florida 33394
Phone: 954.990.4459 | Fax: 954.990.4469
www.birken-law.com

Defendant argues that "Redding never requested an accommodation for clinical rotations." Motion at 15. However, as discussed *supra*, Defendant's, NOVA, current dean did not know how Redding would have known that her previous requests for accommodation were to be ignored and that she was required to seek additional accommodations. This is especially trues since On July 16, 2013, Dr. Wilkinson sent an email to Elaine Lefkowitz, Director of Clinical Education, a list of students that needed an accommodation, including Redding. See July 16, 2013 email from Dr. Wilkinson, attached hereto as Exhibit "N". As Redding was to start rotations, it is required to send a list of all accommodated students to clinical education, and it is standard protocol for Dr. Lefkowitz to send the list of students to anyone that needed to see it, including the person in charge of clinical rotation oversight, Dr. DeGaetano. Wilkinson Depo. at 77. It is unclear why Redding would have to again seek reasonable accommodations when her information was transferred to the person in charge of clinical rotation oversight.

### 3.  Dismissal from School

As discussed *supra*, Defendant's, NOVA, witnesses provided conflicting information as to the reasons Redding was dismissed from school. Defendant, Bruno, testified that the majority of the decision was based on certain mis-perceived mental issues. Dr. DeGaetano testified that Defendant, Bruno, told him that it was absenteeism. Dr. Wallace testified the main reason for Redding's dismissal was for absenteeism. These inconsistencies evidence pretext. Damon, 196 F.3d 1354, 1360 ([W]e find that a jury could infer that the "inconsistencies" between Soto's deposition and affidavit may be evidence of pretext."); Tidwell, 135 F.3d 1422, 1427-28 (citing Bechtel Construction Co., 50 F.3d 926; Howard, 32 F.3d 520, 525. Further, if Defendant's witnesses believed that the main reason that Redding was sent back by Defendant, Bruno, was

LAW OFFICES OF SHAWN L BIRKEN, P.A.
100 SE 3rd Ave., Suite 1300, Fort Lauderdale, Florida 33394
Phone: 954.990.4459 | Fax: 954.990.4469
www.birken-law.com

due to absenteeism, and the undisputed evidence is that Redding's absenteeism was caused by her disability, then this also evidences discrimination.

Even further, the documents and information provided by Defendant, Bruno, were unusual and failed to provide any level of specificity.  Instead, Defendant, NOVA, utilized the information provided by Defendant, Bruno, to improperly dismiss Redding.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion should be denied.

**WHEREFORE**, Plaintiff, Redding, respectfully requests that this Court deny Defendant's, NOVA, Motion for Summary Judgment, and grant any such relief just and proper.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 6th day of July, 2015, I electronically filed the forgoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing is being served this day upon all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF

LAW OFFICES OF SHAWN L BIRKEN, P.A.
100 SE 3rd Ave., Suite 1300, Fort Lauderdale, Florida 33394
Phone: 954.990.4459 | Fax: 954.990.4469
www.birken-law.com

or in some other authorized manner for those counsel or parties who are not authorized to receive

electronically Notices of Electronic Filing.

Respectfully submitted,

/s/Shawn Birken
Shawn L. Birken, Esq.
Florida Bar No.: 418765
Email: sbirken@birken-law.com
Law Offices of Shawn L. Birken, P.A.
100 SE 3rd Ave., Suite 1300
Fort Lauderdale, Florida  33394
Direct Dial: 954-990-4459
Fax: 954-990-4469

LAW OFFICES OF SHAWN L BIRKEN, P.A.
100 SE 3rd Ave., Suite 1300, Fort Lauderdale, Florida 33394
Phone: 954.990.4459 | Fax: 954.990.4469
www.birken-law.com

## SERVICE LIST

*Redding vs. Nova Southeastern University, et al.*
CASE NO. 14-cv-60545-MARRA

**Shawn L. Birken, Esq.**
Florida Bar No.: 418765
Email: sbirken@birken-law.com
Law Offices of Shawn L. Birken, P.A.
100 SE 3rd Avenue, Suite 1300
Fort Lauderdale, Florida  33394
Direct Dial: 954-990-4459
Fax: 954-990-4469
*Counsel for Plaintiff*

**Richard A. Beauchamp, Esq.**
Florida Bar No.: 471313
Email: rbeauchamp@panzamaurer.com
PANZA MAUERER & MAYNARD, P.A.
3600 North Federal Highway, Third Floor
Fort Lauderdale, Florida 33308
Phone: 954-390-0100
Fax: 954-390-7991
*Counsel for Defendant NOVA*
By CM/ECF

**Joyce Ackerbaum Cox, Esq.**
Florida Bar No.: 0090451
E-mail: jacox@bakerlaw.com
**Salomon Laguerre, Esq.**
Florida Bar No.: 0092470
E-mail: slaguerre@bakerlaw.com
BAKER & HOSTETLER LLP
2300 SunTrust Center
200 South Orange Avenue
Post Office Box 112
Orlando, Florida 32802
Phone: 407-649-4000
Fax: 407-841-0168
*Counsel for Defendant BRUNO*
By CM/ECF

LAW OFFICES OF SHAWN L BIRKEN, P.A.
100 SE 3rd Ave., Suite 1300, Fort Lauderdale, Florida 33394
Phone: 954.990.4459 | Fax: 954.990.4469
www.birken-law.com